UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

THEODORE F. JOHNSON,

                Plaintiff,

    -against-                            10 Civ. 1622 (RJH)

**MEMORANDUM OPINION AND ORDER**

NATALIA WOLAN a/k/a NATALIA SWAN, et al.,

                Defendants.

---

Richard J. Holwell, District Judge:

    Plaintiff *pro se* Theodore F. Johnson filed this action on March 1, 2010, asserting claims for fraud, trespass, and federal constitutional violations arising out of his former ownership of a building at 121 West 118th Street in Manhattan ("the Property"). Now before the Court is defendant Natalia Swan's ("Swan")[1] motion to dismiss pursuant to Federal Rules of Civil Procedure 8(a), 9(b), 12(b)(6), and the doctrines of *res judicata* and issue preclusion, and her motion for sanctions pursuant to Fed. R. Civ. P. 11.[2] For the reasons that follow, Swan's motion to dismiss is GRANTED, Swan's motion for sanctions is DENIED, and the Court *sua sponte* dismisses the claims against the remaining defendants.

---

[1] It appears as though Swan changed her name to Natalia Swan from Natalia Wolan in 2002. (*See* Pl.'s Opp'n Ex. H at 2.)

[2] Although Swan's motion briefly mentions Fed. R. Civ. P. 12(b)(5), (*see* Boop Decl. ¶ 2), no further argument is made on that point.

1

## BACKGROUND

**I. Johnson's Litigation History Prior to the Sale of the Property to Swan**

Johnson has an eleven-year history of federal litigation related to the Property.  On May 12, 1999, Johnson filed a federal civil rights action in this District in connection with his ownership of the Property against the Department of Housing Preservation and Development of the City of New York ("HPD"); the New York City Buildings Department; Joseph Lynch, the Commissioner of the New York State Division of Housing and Community Renewal; Rohan James, the Rent Administrator of the New York State Division of Housing and Community Renewal; and Yvette Brickhouse, one of the tenants of the Property.  *Johnson v. Dep't of Housing Preservation & Development*, No. 99 Civ. 3472 (SHS) (S.D.N.Y. dismissed Sep. 27, 2000) ("*Johnson I*").  The court dismissed the complaint on September 27, 2000.  *Johnson I*, ECF No. 31.  Johnson then requested a default judgment to be entered against HPD on May 23, 2001.  *Johnson I*, ECF No. 35.  That request was denied, and Johnson thereafter unsuccessfully appealed to the Second Circuit.  *Johnson v. Dep't of Housing Preservation & Development*, 25 F. App'x 81 (2d Cir. 2002).

The day his appeal was filed in *Johnson I*, June 13, 2001, Johnson commenced another action against HPD, Brickhouse, and the Housing Preservation and Development Emergency Repair Unit, again alleging violations of his constitutional rights arising from his ownership of the Property.  *Johnson v. City of New York, Dep't of Finance*, No. 01 Civ. 5304 (VM) (S.D.N.Y. dismissed Nov. 29, 2001) ("*Johnson II*").  Noting that *Johnson II* relied on "the same nucleus of core facts" as *Johnson I*, Judge Marrero dismissed Johnson's complaint on November 29, 2001.  Johnson then appealed to the Second Circuit on December 28, 2001, which dismissed Johnson's appeal on April 14, 2003.  *Johnson II*, ECF No. 14.

Before Judge Marrero dismissed his complaint, though, Johnson filed another federal civil rights action in this district on October 24, 2001 against Brickhouse; LeShawn Smith, another tenant on the Property; HPD; and two John Doe New York police officers. *Johnson v. Brickhouse*, No. 01 Civ. 9386 (LMM), 2003 WL 355236 (S.D.N.Y. Feb. 18, 2003) ("*Johnson III*"). Judge McKenna dismissed all claims against Brickhouse on February 18, 2003. *Id.* at *5. As in *Johnson I*, Johnson filed motions for default judgments against the *Johnson III* defendants, all of which were denied. *Johnson III*, 2003 WL 355236, at *4 ("Given that plaintiff has not shown that any of the defendants other than Brickhouse have been properly served or that any of them have in fact defaulted, they are excused."). In May 2004, Johnson voluntarily withdrew *Johnson III* without prejudice. *Johnson III*, ECF No. 30.

Johnson's absence from this District was short-lived. In December 2004, Johnson filed another federal civil rights action against HPD, two of HPD's attorneys, and Brickhouse. *Johnson v. Department of Housing Preservation and Development*, 04 Civ. 8580 (WHP) (S.D.N.Y. dismissed Nov. 23, 2005) ("*Johnson IV*"). Judge Pauley dismissed all of Johnson's claims as being time-barred, barred by *res judicata*, or "impossible for this Court to analyze" and appropriate for dismissal under Rule 8(a)(2). *Johnson IV*, ECF No. 18. Johnson appealed Judge Pauley's decision on December 1, 2005, and the Second Circuit affirmed the decision in June 2007. *Johnson v. Dep't of Housing Preservation and Development*, 218 F. App'x 5, 7 (2d Cir. 2007).

## II. Sale of the Property to Swan

Plaintiff executed a contract selling the Property to Swan in July 2002, but refused to close on the sale because he wanted first to resolve his challenges to judgments arising from tax

3

assessments made on the property.  (*See* Boop Decl. Ex. A at 1-2.)[3]  Swan brought a suit in New York Supreme Court to compel specific performance on the contract selling the property.  (*Id.*)  In a decision and order dated January 4, 2006, Justice Debra A. James granted Swan's motion for summary judgment and directed Johnson to specifically perform the contract of sale of the Property.  (*Id.* at 5.)

Johnson resisted the order with a motion to reargue and a purported counterclaim, which Justice James found "wholly meritless."  (Boop Decl. Ex. B at 2.)  Justice James then ordered a receiver to take possession of the property and convey it to Swan for the formerly agreed-on price.  (*See id.* at 3-4.)

Johnson then returned to this District on January 3, 2008.  *Johnson v. James*, 08 Civ. 32 (PAC), 2009 WL 777861 (S.D.N.Y. Mar. 25, 2009) ("*Johnson V*").  In that action, Johnson sued Justice James; Swan; Alterman and Boop, LLP, Swan's lawyers; William Schaap, another one of Swan's lawyers; Robert S. Sikorski, the receiver for the Property; Fidelity National Title Insurance Company, Swan's title insurer; Yolanda Chang, the broker on the property sale; Gwenerva Cherry, a lawyer who had represented Johnson; HPD; and the New York City Department of Finance ("DOF").  *Id.* at *1.  By Memorandum Opinion and Order dated March 25, 2009, Judge Crotty dismissed Johnson's claims.  *Id.*  The claims against HPD and DOF were dismissed on *res judicata* grounds, and although "[t]he Court underst[ood] by reading the Complaint that Mr. Johnson believes that there was fraud in the court-ordered sale of his property to Ms. Swan," Johnson's complaint contained such vague and conclusory allegations that it could not satisfy "even the liberal pleading standard under Rule 8(a)."  *Id.* at *4.  Johnson

---

[3] The Boop Declaration is apparently meant to serve as both a declaration and as a memorandum of law, as it contains substantial legal argument.  (*See* Boop Decl. ¶¶ 21-54.)

appealed to the Second Circuit, which affirmed Judge Crotty's opinion in a summary order dated February 8, 2010. *Johnson v. James*, 364 F. App'x 704, 706 (2d Cir. 2010).

### III. This Litigation

On March 1, 2010, Johnson commenced this action, his sixth suit in federal court regarding the Property and his third attempt at voiding the conveyance of the Property to Swan. Plaintiff is an 83-year-old World War II veteran and the former owner of the Property. (*See* Compl. ¶ 4, 5, 8.) The Complaint appears to request a judgment declaring that various documents relating to the Property's ownership are fraudulent, including the deed to the property recorded with the New York City Department of Finance indicating Swan's ownership, various insurance documents naming Swan as fee-simple owner of the Property, and a real property transfer report filed with the State of New York's Board of Real Property Services indicating the transfer from the state-court receiver to Swan. (*See* Compl. ¶¶ 12-16, Exs. A, B, D.) There are no further facts in the Complaint that attempt to explain why these documents are fraudulent. The Complaint also asserts that Johnson "is suing the defendant NATALIA WOLAN a/k/a NATALIA SWAN, individually and as NATALIA WOLAN, for the sum of Two Million Five Hundred and 00/100 ($2,500,000.00) Dollars for fraudulent conveyance and changing plaintiff [sic] landmark building at Section 7, Block 1903, Lot 20." (Compl. ¶ 8.) But nowhere in the Complaint is there an explanation of what facts make the conveyance fraudulent, what was changed about the building, or why changes to the building would be illegal.

Based on these allegations of fraud, Johnson asks this Court to declare that the defendants are trespassers, to order them to vacate the Property, to award punitive damages of five million dollars, and to grant compensatory damages of five million dollars.

Swan filed a motion to dismiss based on Federal Rules of Civil Procedure 8(a)(2), 9(b), 12(b)(6), and the doctrines of *res judicata* and issue preclusion, and included a motion for sanctions under Rule 11. In response, Johnson filed a "Default Judgment and Answer to Defendant's 12(b)(1), 12(b)(5), 12(b)(6), and Rules 8(a) and 9(b)."

## DISCUSSION

### I. Default Judgment

Before addressing Swan's motion to dismiss, the Court addresses Johnson's motion for a default judgment against Swan. That motion is denied for several reasons.

First, there has been no entry of default in this case, which "is a prerequisite to obtaining a default judgment." *Chelsea Equipment & Services Corp.*, No. 96 Civ. 0147 (MBM), 1997 WL 790581, at *5 (S.D.N.Y. Dec. 24, 1997). Second, the motion does not have appended to it any of the documents required by this Court's Local Rules for entry of a default judgment by the Court. *See* Local Rule 55.2. Third, the Second Circuit has cautioned that "defaults are generally disfavored and are reserved for rare occasions, [and] when doubt exists as to whether a default should be granted or vacated, the doubt should be resolved in favor of the defaulting party." *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993). And fourth, Swan has not failed to plead or defend; she filed the motion to dismiss that this opinion addresses, and "[i]t is well established in this District that the filing of a motion to dismiss fall squarely within the ambit of the phrase 'otherwise defend.'" *In re Sumitomo Copper Litigation*, 204 F.R.D. 58, 61 (S.D.N.Y. 2001) (internal quotation marks omitted).

### II. Standard of Review for the Motion to Dismiss

On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) the Court accepts as true all factual allegations in the complaint and draws all reasonable inferences in the

plaintiff's favor.  *In re DDAVP Direct Purchaser Antitrust Litigation*, 585 F.3d 677, 692 (2d Cir. 2009).  The complaint's allegations, however, "must be enough to raise a right of relief above the speculative level."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Only a "plausible claim for relief survives a motion to dismiss."  *LaFaro v. New York Cardiothoracic Group, PLLC*, 570 F.3d 471, 476 (2d Cir. 2009).  Thus courts are "not bound to accept as true a legal conclusion couched as a factual allegation," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949-50 (2009) (internal quotation marks omitted).

Complaints prepared *pro se* are held "to less stringent standards than formal pleadings drafted by lawyers."  *Peay v. Ajello*, 470 F.3d 65, 67 (2d Cir. 2006).  Courts must "liberally construe pleadings and briefs submitted by *pro se* litigants, reading such submissions 'to raise the strongest arguments they suggest.'"  *Bertin v. United States*, 478 F.3d 489, 491 (2d Cir. 2007) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).  Nevertheless, courts need not accept as true "conclusions of law or unwarranted deductions of fact," *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 771 (2d Cir. 1994), and "pro se status does not relieve a plaintiff of the pleading standards otherwise prescribed by the Federal Rules of Civil Procedure," including Rule 8.  *See Pandozy v. Segan*, 518 F. Supp. 2d 550, 554 (S.D.N.Y. 2007).

### III. *Res Judicata* and Issue Preclusion Effects of Prior Lawsuits

Swan argues that the doctrines of *res judicata* and issue preclusion bar Johnson's claims in this case based on Justice James's decision ordering specific performance on the contract of sale with Swan and on Judge Crotty's decision in *Johnson V*. (Boop Decl. ¶¶ 37-43.) "Otherwise known as *res judicata,* claim preclusion bars a subsequent action—involving either the same plaintiffs or parties in privity with those plaintiffs—from asserting claims that were, or

could have been, raised in a prior action that resulted in an adjudication on the merits." *Bank of New York v. First Millennium, Inc.*, 607 F.3d 905, 918 (2d Cir. 2010). "Issue preclusion appl[i]es when (1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits." *Id.* (internal quotation marks omitted).

Neither doctrine seems to apply squarely here. Johnson's allegations of fraud seem to center on documents implementing the court-ordered transfer of his property to the receiver and then to Swan. Because Justice James's decision ordered that transfer, claims regarding fraud in that transfer could not have been litigated in that case. *Johnson V* also does not bar Johnson's claims under *res judicata* or issue preclusion because it dismissed Johnson's claims against Swan based on Rule 8(a), which is not a merits determination. *Johnson V*, 2009 WL 777861, at *4; *see Scibelli v. Lebanon County*, 219 F. App'x 221, 222 (3d Cir. 2007) ("[A]n order dismissing a complaint under Rule 8 . . . is not an adjudication of the merits."); *see also Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988) (indicating that a Rule 8 is not an adjudication on the merits).

### IV. Vague and Conclusory Allegations

Just because the Complaint can avoid claim and issue preclusion dismissals, however, does not mean that it can avoid dismissal. The Complaint still fails because it does not state any facts that could lead the Court to find an actionable claim. In fact, apart from defendant's age, his ownership of the Property, the Property's location and characteristics, and the existence of documents alleged to be fraudulent, the Complaint fails to state any facts at all.

Although "the pleading standard Rule 8 announces does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me

accusation." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).  Even *pro se* cases are subject to dismissal in cases "in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988).  The Complaint, apart from invoking the words "fraud" and "trespasser," provides no indication of any actions, let alone illegal actions, on the part of any of the defendants in the Complaint.  The Complaint alleges a "fraudulent conveyance" to Swan, that Swan "chang[ed] plaintiff [sic] landmark building," and that various documents are fraudulent, (Compl. ¶¶ 8, 12-16.), but without at least some explanation of the factual basis for these claims, these conclusory allegations utterly fail to satisfy even the liberal pleading standard of Rule 8(a).  They certainly do not "state with particularity the circumstances constituting fraud or mistake" to satisfy the heightened standard of Rule 9(b) for complaints alleging fraud.  Fed. R. Civ. P. 9(b).  The Court cannot determine the factual basis for the allegations in the Complaint, even giving it a liberal reading, and dismissal under Rule 8(a) is appropriate in this case.  Swan's motion to dismiss is therefore granted, as Johnson's claims here are as frivolous on their face as they were in *Johnson V. Johnson V*, 2009 WL 777861, at *4.  As for the remaining defendants who did not file motions to dismiss, the Court *sua sponte* finds that the Complaint is frivolous on its face, as the Complaint makes no mention of those defendants other than to demand that they vacate the Property and pay Johnson money.  (Compl. ¶ 19.)  Accordingly, the claims against all remaining defendants are also dismissed.  *See Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995) ("When a complaint fails to comply with the[] requirements [of Rule 8], the district court has the power, on motion or *sua sponte,* to dismiss the complaint . . . .").

9

## V. Sanctions

Swan also moves for sanction against Johnson under Rule 11. That motion is denied for Swan's failure to satisfy Rule 11's "safe harbor" provision, described below.

Fed. R. Civ. P. 11(c)(2) provides that "[a] motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b)." This means that "a motion for sanctions must be made separately from any other motion, including a motion to dismiss." *Castro v. Mitchell*, ___ F. Supp. 2d ___, 2010 WL 3001640, at *5 (S.D.N.Y. 2010). Once the motion is served on the adverse party, that party is allowed twenty-one days in which "the challenged paper, claim, defense, contention, or denial [may be] withdrawn or appropriately corrected." Fed. R. Civ. P. 11(c)(2). Although Swan's lawyers sent Johnson a letter describing their intent to seek sanctions, (*see* Boop Decl. Ex. I), "even a letter detailing the nature of the conduct which purportedly violates Rule 11 and threatening to file a motion for sanctions cannot constitute notice under Rule 11." *Castro*, 2010 WL 3001640, at *4. Accordingly, Swan's motion for sanctions is denied. *See Hadges v. Yonkers Racing Corp.*, 48 F.3d 1320, 1328-29 (2d Cir. 1995) (reversing district court for granting motion for sanctions that did not satisfy the safe harbor provision of Rule 11).

## CONCLUSION

For the foregoing reasons, Swan's motion to dismiss [4] is GRANTED and her motion for sanctions is DENIED. The Court *sua sponte* dismisses Johnson's claims against the remaining defendants. Johnson's motion for default judgment [5] is DENIED. The Clerk of the Court is requested to close this case.

SO ORDERED.

Dated: New York, New York
December 13, 2010

_____
Richard J. Holwell
United States District Judge